UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:18-CV-00084-LLK

ERIC TRAVERS                                                                                           PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security                    DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. The fact and law summaries of the parties are at Dockets # 11 and 14. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 9.) The matter is ripe for determination.

This is a disability claim pursuant to Title II of the Social Security Act. The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled between November 2013, when he last worked as a school teacher and alleges he became disabled, and June 2014, when his insured status for Title II benefits expired. [Administrative Record ("AR") at 19.]

Plaintiff alleges disability due to severe social anxiety disorder and depression.[1] He received treatment for these impairments at Kelley Psychiatric Clinic in Paducah, Kentucky from psychiatrist Ronald L. Kelley and licensed clinical psychologist Raymond Gordon Williams, Ph.D. He argues that the ALJ erred in rejecting the disabling opinions of Drs. Williams and Kelley.

Because the ALJ's decision is supported by substantial evidence and Plaintiff's argument is unpersuasive, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

---

[1] Plaintiff does not allege any vocationally-significant physical impairment.

1

**Plaintiff's disability claim**

Plaintiff was born in 1972. [AR at 255.] He was an only child and grew up in relative social isolation. [*Id.*] He worked on a large cattle farm in Livingston County, Kentucky, which his paternal grandfather managed. [AR at 286.] In 1995, he graduated from Murray State University with a bachelor's degree in animal science. [*Id.*] In 1995 through 2009, he worked on another large farm in Livingston County. [*Id.*]

Plaintiff married a school teacher, who influenced him to get a master's degree in education. [AR at 116, 286.] In 2009, he began teaching at Livingston County Middle School. [*Id.*] He testified that, at first, he loved teaching, but the new principal overwhelmed him with paperwork "before you even get to the classroom," "expectations," "pressures," and "meeting after meeting," which "I just dreaded." [AR at 117.]

In February 2013, Plaintiff was hospitalized because he thought he was having a heart attack. [AR at 113.] It wound up being related to job stress. [*Id.*] In November 2013, Plaintiff was put on medical leave because he could not continue in the classroom due to his severe anxiety. [AR at 286-87.]

In February or March 2014, Plaintiff began pursuing his Social Security disability claim and began treatment at Kelley Psychiatric Clinic in Paducah, Kentucky, with psychiatrist Ronald L. Kelley and licensed clinical psychologist Raymond Gordon Williams, Ph.D. [AR at 285.] Dr. Kelley prescribed a wide variety of psychotropic medication, including Doxepin, Trazadone, Brintellix, Gabepentin, Topomax, Flexeril, Klonopin and Buspar. (Docket # 11 at 5 referencing AR at 566-96, 636-55.)

In March 2014, upon counsel's suggestion, Dr. Williams submitted a formal Psychological Evaluation and completed the Medical Source Statement of Ability to Do Work-Related Activities (Mental) form. [AR at 285-94.] In December 2015, Dr. Kelley completed a similar form. [AR at 656-57.]

**The opinions of Drs. Williams and Kelley**

Dr. Williams diagnosed Social Anxiety Disorder (Diagnostic and Statistical Manual of Mental Disorders (DSM), Section 300.23). [AR at 290.] Dr. Williams opined that Plaintiff is "currently unable to involve himself in any type of substantial gainful employment due to a severe social anxiety problem with accompanying cognitive deficits and social withdrawal and inhibition"; Plaintiff's "long-standing social inhibitions … are becoming more pronounced with the aging process"; however, Plaintiff "may eventually be able to return to the work force assuming amelioration of his current significant mental health problems." [AR at 291.]

Dr. Williams found that Plaintiff is "markedly" limited in his abilities to: 1) Interact appropriately with the public; 2) Interact appropriately with supervisor(s); 3) Interact appropriately with co-workers; 4) Respond appropriately to work pressures in a usual work setting; 5) Respond appropriately to changes in a routine work setting; 6) Understand and remember detailed instructions; 7) Carry out detailed instructions; and 8) Ability to make judgments on simple work-related decisions. [AR at 292-93.]

Dr. Kelley found that Plaintiff is "extremely" limited in his abilities to: 1) Remember locations and work-like procedures; 2) Maintain attention and concentration for extended periods; 3) Perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 4) Work in coordination with proximity to others without being distracted by them; 5) Compete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 6) Get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and 7) Respond to changes in the work setting. [AR at 656-57.]

It is undisputed that acceptance of the opinions of Drs. Williams and Kelley would require an ultimate finding of disability.

### The ALJ's decision

The ALJ credited the opinions of Drs. Williams and Kelley only to the extent of her residual functional capacity (RFC) finding, which allowed Plaintiff to perform a significant number of jobs in the national economy. Specifically, the ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels, and mentally he can:

> … do simple, routine, repetitive work tasks, meaning tasks that apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, with the ability to deal with problems involving several concrete variables in or from standardized situations. The claimant could occasionally interact with coworkers and supervisors but could not maintain sustained interaction with the public. The claimant could not work in a fast paced or production based work environment but could do entry level or goal oriented work.

[AR at 15.] The ALJ accepted the vocational expert's (VE's) testimony that an individual of Plaintiff's age, education, and prior work experience, with the above RFC, could perform jobs such as icer, commercial cleaner, meat grinder, molding machine tender, skin lifter, and machine feeder. [AR at 19, 126-27.] The ALJ concluded that Plaintiff was not disabled from November 2013, when he alleges he became disabled through June 2014, when he was last insured for Title II benefits. [AR at 19.]

### Discussion

In determining Plaintiff's RFC, the ALJ gave "little weight" to the disabling opinions of Drs. Williams and Kelley. [AR at 17.] Plaintiff argues that the ALJ erred in rejecting these opinions. (Docket # 11.)

While Plaintiff persuasively shows that substantial evidence would have supported the ALJ's acceptance of these opinions, that is not the standard on judicial review. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009). This Court's review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence in the administrative record. *Id.* at 405. "The substantial-evidence standard … presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* at 406. A reviewing court decides only whether substantial evidence supports the ALJ's decision. *Id.* If so,

the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id.*

Substantial evidence supported the ALJ's decision to reject the disabling opinions of Drs. Williams and Kelley. The ALJ gave two general and five specific reasons for discounting those opinions.

First, generally speaking, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." [AR at 12 quoting 42 U.S.C. § 423(d)(1)(A).] At the earliest, Plaintiff became disabled in November 2013, when he quit or was forced to quit teaching. Less than 12 months later, in March 2014, Dr. Williams opined that Plaintiff is "disabled" and submitted evaluations and forms supportive of that opinion. Yet Dr. Williams admitted that Plaintiff "may eventually be able to return to the work force." [AR at 291.]

Second, the disabling opinions of Drs. Williams and Kelley were not genuine medical opinions but rather residual functional capacity (RFC) conclusions going to the ultimate issue of disability, which "under the Social Security Act and Regulations is one that is exclusively reserved to the Commissioner (Social Security Ruling 96-5p)." [AR at 17.][2]

Third (and more specifically), Drs. Williams and Kelly identified only "conclusory" reasons in support of their disabling opinions. [*Id.*][3] A treating source's medical opinion is entitled to controlling

---

[2] 20 C.F.R. § 404.1527(d) provides that opinions from medical sources that "would direct the determination or decision of disability" are not genuine medical opinions but rather "medical source opinions on issues reserved to the Commissioner," which are entitled to no "special significance." "[T]he ALJ – not a physician – ultimately determines a claimant's RFC" based on the medical and non-medical evidence as a whole. *Coldiron v. Comm'r*, 391 F. App'x 435, 439 (6th Cir. 2010).

[3] The forms asked Drs. Williams and Kelley to identify what medical/clinical findings support their assessments, and they responded: "Mr. Travers has a severe social anxiety problem that makes it impossible for him to operate in the work place at this time. … As noted, Mr. Travers is dealing with a severe social anxiety problem which has intensified as his teaching career has continued. … He is easily confused during my office interviews. He has forgotten many of my requests for documents. His wife reports frequent forgetfulness. … He has anxiety related concentration impairment. His wife says he is unable to help her fifth grade son with his homework. … Concentration impairment and low stress tolerance." [AR at 292-93, 656-57.]

weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2).

Fourth, their treatment notes do not support their opinions. [*Id.*] On the contrary, they consistently assigned Global Assessment of Functioning (GAF) scores, which indicated only mild to moderate limitations. [*Id.* referencing GAF scores in the 60s at AR 295, 298, 301, 305, 566, 569, 572, 575, 578, 581, 584.][4]

Fifth, Dr. Williams administered a standard IQ test, which revealed that Plaintiff has intellectual functioning in the normal range, which is at odds with findings of "extreme" and "marked" inabilities to understand, remember, and carry out even simple instructions. [AR at 14, 288, 292, 656.] Sixth, Plaintiff's condition improved with medication. [AR at 17.] Seventh, Plaintiff's daily activities are inconsistent with disabling limitations. [*Id.*]

### Order

Because the ALJ's decision is supported by substantial evidence and Plaintiff's arguments are unpersuasive, the final decision of the Commissioner is AFFIRMED, and Plaintiff's complaint is DISMISSED.

March 11, 2019

**Lanny King, Magistrate Judge**
**United States District Court**

---

[4] A GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, 32-33 (4th ed., Text Rev. 2000) (DSM-IV-TR). A GAF score between 51-60 indicates moderate symptoms (e.g., flat effect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers); whereas a GAF score 61 and 70 indicates "some mild symptoms" (e.g., depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships.